UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TECNA PERU, S.A.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-CV-773 |
| | § | |
| UNISERT MULTIWALL SYSTEMS, | § | |
| INC. and KENNETH TIERLING, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before this Court is Defendants' Motion for Stay Pending Interlocutory Appeal of the Order Denying Defendants' Motion to Compel Arbitration (Doc. No. 25).[1] After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that Defendants' Motion should be **DENIED**.

### I. BACKGROUND

This case arises from a contract dispute between Plaintiff Tecna Peru, S.A.C. ("Tecna") and Defendants Unisert Multiwall Systems ("Unisert") and Kenneth Tierling. Tecna and Unisert, which both offer corrosion protection services, entered into an agency agreement in which Tecna was appointed as Unisert's exclusive agent in Columbia, Peru, and Ecuador. (Doc. No. 29-1.) Under this agreement, Tecna alleges that it was to receive a 10% commission on each contract that it helped facilitate between Unisert and a third party. (Doc. No. 1 at 3.) The agency agreement is dated February 2, 2007.

After the agency agreement was finalized, Tenca alleges that Unisert entered into four contracts with third party entities, Consorcio Terminales ("CT") and Vopak Peru S.A. (*Id.* at 3-

---

[1] All docket references are to Civil Action No. 4:14-CV-773.

4.) One of these four contracts, between Unisert and CT, is referred to as the White Lines Contract or the Main Contract and is dated June 14, 2007. Unisert subsequently assigned a subset of its rights under this contract to Tecna. (Doc. No. 13 at 1.) This assignment agreement is entitled the Contract of Cession and is dated July 2, 2007. (Doc. No. 13-2.) The Contract of Cession contains an arbitration provision which reads, in relevant part,

> "[t]he possible differences in the interpretation of the present Contract of Cession that could be [sic] arise between [Unisert] and [Tecna] will be resolved as much as possible by agreement between the parties or otherwise by the norms of the Civil code and other effective dispositions. In case any discrepancies may remain, these will be subjected to arbitration so that they are solved by Arbitration Court made up of three members."

(Doc. No. 13-2 at 2.) The remainder of the arbitration provision details the agreed arbitration procedures. Of the three relevant contracts, the agency agreement, the Main Contract, and the Contract of Cession, only the Contract of Cession contains an arbitration provision.

Tecna contends that Unisert failed to pay the full 10% commission owed on all four contracts under the agency agreement. This alleged breach is the subject of this lawsuit. Defendants filed a Motion to Compel Arbitration, arguing that Tecna's claim is properly resolved in arbitration, not in litigation. (Doc. No. 13). Tecna countered that the Contract of Cession has no bearing on its entitlement to commissions under the agency agreement. (Doc. No. 16.) Thus, the arbitration provision does not govern the instant dispute. (Id.) After a hearing, the Court denied the Motion to Compel. (Minute Entry Nov. 6, 2014.)

Defendants then filed this Motion in order to stay the proceedings pending an interlocutory appeal of the Court's denial of their Motion to Compel. (Doc. No. 25.) Tecna responded and a hearing was held on the matter. At the hearing, the Court asked Tecna to file a

copy of the agency agreement, as it was not previously in the record. Tecna subsequently did so. (Doc. No. 29.)

## II. LEGAL STANDARD

The Fifth Circuit may undertake an interlocutory appeal of a denial of a motion to compel arbitration to determine if the parties have entered into a binding agreement to arbitrate. *May v. Higbee Co.*, 372 F.3d 757, 763 (5th Cir. 2004). However, an appeal of a denial of a motion to compel arbitration does not automatically divest the district court of jurisdiction to proceed on the merits. *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 909 (5th Cir. 2011). Thus, a district court may, but is not required to, stay the underlying proceedings pending the appeal. *Id*. at 910.

To determine whether a stay should be granted, a district court must consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceedings; and (4) whether public interest favors a stay. *Id.* Of these factors, the first two are the most critical. *U.S. Transocean Deepwater Drilling*, 537 F. App'x 358, 360 (5th Cir. 2013) (citing *Niken v. Holder*, 556 U.S. 418, 434 (2009)). The applicant carries the burden of demonstrating that a discretionary stay is justified. *Id.*

## III. ANALYSIS

### 1. Likelihood of Success on the Merits

In order to prevail on this factor, the stay applicant must make a strong showing that he is likely to succeed on the merits of his motion to compel arbitration. The Court denied Unisert's Motion to Compel Arbitration because it found that the dispute about purported commission

3

payments did not fall within the scope of the arbitration provision of the Contract of Cession. Since Unisert has not offered any new or persuasive arguments in support of its position, the Court finds that this factor counsels against a stay.

The stated purpose of the Contract of Cession is

"for [Unisert] to yield its contractual position in the Main Contract in favor of [Tecna] . . . in regard to the obligations and rights relative to the part of the project indicated in [Clause Sixteen of the Main Contract], consisting of the provision of manual labor and equipment for execution of the installation of the equipment of protection against the corrosion of the submarine steel pipes for existing white product unloading in the terminals operated by CT." (Doc. No. 13-2 at 1.)

This contract assigned Tecna the responsibility of performing a particular aspect of the Main Contract – labor and installation of corrosion protection equipment. The arbitration provision contained within this contract applies only to "possible differences in the interpretation of the present Contract of Cession that could be [sic] arise between [Unisert] and [Tecna]." (Doc. No. 13-2 at 2.)

It is clear to this Court that a dispute about the 10% commission payments, which are governed by the agency agreement, cannot be considered "possible differences in the interpretation of the present Contract of Cession." Unlike the Main Contract and the Contract of Cession, the agency agreement concerns the facilitation of future contracts, not a project to revamp underwater pipelines. In fact, the agency agreement explicitly contemplates Tecna's participation in "local project[s]," but separates this participation from the receipt of "the base commission." (Doc. No. 29-1.) By contrast, and by its express terms, the arbitration provision limits its purview to disputes arising out of the Contract of Cession. Since the Contract of

4

Cession concerns a wholly different subject than the agency agreement, it cannot be said that disputes arising out of the Contract of Cession include disagreements about the commission payments.

Furthermore, the agency agreement was executed in February 2007, months prior to the Main Contract and the Contract of Cession. In order to hold that the arbitration provision in the Contract of Cession applies to disputes arising under the agency agreement, the Court would be required to find that the arbitration provision was intended to apply retroactively to a separate agreement executed months prior. Unisert has offered no evidence of such intent.

Simply put, this dispute does not arise from the Contract of Cession, but rather from a separate and previous agreement between the parties. Thus, the Court cannot stretch the arbitration provision in the Contract of Cession to govern this dispute over unpaid commissions. Since it has not presented any reasons why the Court should reconsider this ruling, Unisert has failed to meet its burden of a strong showing of success on the merits of its motion to compel.

**2. Irreparable Injury**

Unisert claims it would be irreparably injured absent a stay because it would be required "to incur additional costs and attorney's fees defending the lawsuit at the trial level." (Doc. No. 25 at 3.) The Fifth Circuit has rejected the argument that the time and expense of litigation alone constitutes an irreparable injury. *Weingarten*, 661 F.3d at 913 ("The only grounds for irreparable injury proffered by Miller are that he will 'be required to incur the time and expense of litigation and may lose the benefits of arbitration' . . . [W]e reject the idea that arbitration ensures substantial speed and cost savings, so these considerations alone do not constitute irreparable

injury.").[2] Since the only type of irreparable injury Unisert identifies is the additional time and cost of the underlying litigation, this factor disfavors a stay.

### 3. Substantial Injury to Other Parties

Unisert also contends that a stay would not cause substantial injury to Tecna because, if the Fifth Circuit affirms the denial of the motion to compel, litigation will recommence from where it was stayed. Tecna disputes this characterization, arguing that a stay will delay the resolution of its claim for the recovery of over $850,000 in unpaid commissions.

The Court acknowledges that both parties will be disadvantaged while this matter is appealed because an appeal involves delay. On the other hand, both parties would benefit from being spared litigation costs if the Fifth Circuit were to rule in favor of arbitration. Thus, this factor cannot be construed in favor of or against a stay.

### 4. Public Interest

Finally, the parties assert competing public interest concerns. Unisert rightly notes that there is an express public policy in favor of arbitration. *See generally* 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("We have described [section 2] as reflecting . . . a liberal federal policy favoring arbitration.") (internal citation and quotation marks

---

[2] The *Weingarten* court left open the possibility that discovery of sensitive information or discovery that jeopardizes the right to arbitrate could constitute an irreparable injury. *Weingarten*, 661 F.3d at 913 n. 19 ("In [*Trefny v. Bear Stearns Securities Corp.*, 243 B.R. 300 (S.D. Tex. 1999)], the court included the additional argument that Bear Stearns would have been forced to engage in discovery absent a stay, which would cause irreparable injury because such discovery could jeopardize its right to arbitrate. That, with the potential cost increases, may be an irreparable injury, particularly where parties contracted for arbitration to limit discovery of sensitive information."). The *Weingarten* court did not consider the injury posed by damaging discovery, however, because it was not mentioned in the applicant's briefing and was therefore waived. *Id.* Similarly, Unisert does not argue that ongoing discovery in this matter would jeopardize its right to arbitrate or lead to the disclosure of sensitive information. These arguments are therefore considered waived.

omitted). In response, Tecna argues that public policy also favors the speedy resolution of claims.

Where a case does not raise "a difficult question" on appeal, and where the stay applicant has not demonstrated a likelihood of success on the merits, the Fifth Circuit has found that the public interest in speedy resolution of disputes outweighs the public policy of preserving judicial resources from the risk of reversal. *Weingarten*, 661 F.3d at 913. Unisert has not argued that this case presents a difficult question nor has it carried its burden of showing a likelihood of success on the merits of its appeal. Thus, the interest in swift resolution trumps the interest in preserving this Court's resources.

The Court is not persuaded that the general public policy in favor of arbitration strongly counsels in favor of a stay. If this policy were sufficient to warrant a stay, a stay pending interlocutory appeal of a denial of a motion to compel arbitration would be reflexive. Since the Fifth Circuit has made clear that such stays are not automatic, the public policy in favor of arbitration cannot override the other considerations discussed herein.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Stay Pending Interlocutory Appeal of the Order Denying Defendants' Motion to Compel Arbitration is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 22nd day of December, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE