**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| TECNA PERU, S.A.C.,<br><br>    **Plaintiff,**<br><br>v.<br><br>UNISERT MULTIWALL SYSTEMS, INC.,<br><br>    **Defendant.** | **CIVIL ACTION NO. 4:14-cv-0773**<br><br>**Honorable Keith P. Ellison** |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Unisert Multiwall Systems, Inc.'s Renewed Rule 50(a) Motion for Judgment as a Matter of Law or, Alternatively, Rule 50(b) Motion for New Trial (the "Motion").

**I.    BACKGROUND**

Unisert Multiwall Systems, Inc. ("Unisert") is an American company that designs, fabricates, installs, and repairs multiwall pipeline systems. In 2007, Plaintiff Tecna Peru, S.A.C. ("Tecna"), a company based in South America, recognized an application for Unisert's technology and offered to act as Unisert's agent in Colombia, Peru, and Ecuador. Unisert was amenable to the offer and, pursuant to an agency agreement dated Feb. 2, 2007 (Pl. Ex. 16, the "Agency Agreement"), appointed Tecna to act as its exclusive agent in those countries. The Agency Agreement lacked specificity—it was only a half-page in length—but the parties seem to agree on the general thrust of their respective obligations: Tecna agreed to market Unisert's products and services, and, in exchange, Unisert agreed to pay Tecna 10% of the gross amount received under each contract that Unisert secured as a result of Tecna's marketing. (*See* Pl. Ex.

16.) In other words, Tecna was to receive a 10% commission on each deal that it sourced for Unisert.

Even prior to the execution of the Agency Agreement, Tecna had begun marketing Unisert's services and found a potentially willing customer, Consorcio Terminales ("CT"). Tecna told Unisert that a $200,000 "propina," the Spanish word for "tip," would need to be added to the total amount of the bid price for the potential contract with CT, and Unisert agreed to include the so-called propina in the bid. Unisert's bid was successful, and the company executed a contract with CT ("Contract 1") on July 2, 2007. (Pl. Ex. 19.) Unisert subsequently paid Tecna a 10% commission in connection with this contract, but subtracted $10,000 from the payment to compensate for damage that occurred to Unisert's property.

Tecna continued marketing Unisert's services in the two years that followed. It was around this time, however, that the parties' relationship soured. Unisert's CEO, Roger Tierling, testified that he heard in August of 2009 that Tecna had pocketed a substantial portion of the "propina" instead of paying the full $200,000 to CT.[1] Tierling then arranged a meeting with Tecna's CEO, Alberto Padilla, to discuss the issue.

The contents of their conversation was a subject of dispute at trial. Tierling testified that he expressly "fired" Padilla and terminated the Agency Agreement; Padilla testified that Tierling was upset and expressed his displeasure, but that the Agency Agreement was never terminated. In any event, Tecna continued marketing Unisert's services, and Unisert secured three additional contracts in the region in the three years that followed the purported termination.

Unisert secured a second contract with Consorcio Terminales on August 24, 2009 ("Contract 2"), (Pl. Ex. 25,) and Padilla asked Tierling via email to send the commission

---

[1] At trial, Tecna's CEO testified that the propina was always meant to be used as a catch-all fund for miscellaneous expenses, not as a lump sum payment to CT.

payment schedule for the contract. (Pl. Ex. 26.) Tierling responded that Tecna's commissions would be "credited against the $140,000 owed Unisert," and that Tecna would "[t]hen . . . receive commissions as usual." (Pl. Ex. 26.) Padilla responded that Tecna did not owe Unisert a penny, and subsequently emailed Tierling several more times asking if Unisert had received any payments from CT and for a commission payment schedule. (*See* Pl. Exs. 26-30.) Padilla eventually sent a spreadsheet to Tierling reflecting the amount that Unisert would ultimately owe Tecna on Contract 2 (10% of the gross amount of the underlying contract). (Pl. Ex. 31.) Padilla stated that, if Tierling did not agree with the amount of the ultimate commission, Tierling should provide a chart showing the amount Unisert believed it would owe Tecna, and they could settle the dispute in court. (Pl. Ex. 31.) Tierling did not respond, and Unisert never made any payment to Tecna in connection with Contract 2.

Tecna provided evidence that Unisert nonetheless continued to otherwise correspond with Padilla (*see, e.g.,* Pl. Ex. 34), and that Padilla continued to market Unisert's services. Unisert entered into a contract with Vopak Peru on June 23, 2010 ("Contract 3"), and an additional contract with Consorcio Terminales on September 5, 2012 ("Contract 4"). Unisert concedes that it did not pay Tecna a commission in connection with Contracts 3 or 4.

Tecna brought suit to recover damages for Unisert's alleged breach of the Agency Agreement on March 26, 2014, and the case went to trial in October of 2016. There was no dispute at trial that (i) the Agency Agreement was a valid contract; (ii) Tecna had tendered performance;[2] and (iii) that Unisert had failed to pay Tecna 10% of the gross amount of

---

[2] At least with respect to Contracts 1, 2, and 3, the parties did not dispute that Unisert had secured the contracts as a result of Tecna's marketing and promotion of Unisert's products and services. Unisert disputed only that Tecna's marketing led to its procurement of Contract 4.

Contracts 1, 2, 3, or 4.[3]  In other words, there was no dispute that Tecna had failed to fully

comply with the Agency Agreement.  The only disputed elements of Tecna's breach of contract

claim were the extent to which Tecna performed, and, by extension, the damages that Tecna

sustained as a result.  Unisert also contended that its failure to perform was excused, asserting

two affirmative defenses: prior material breach, and statute of limitations.

The Court submitted these issues to the jury.[4]  The jury rejected Unisert's affirmative

defenses, and found that Unisert's procurement of all four contracts was the result of Tecna's

marketing efforts.  (Dkt. 101.)  The jury further found that Tecna was therefore entitled to

recover $456,447.35, $267,410.82, and $115,932.03 for Unisert's failure to pay a commission on

Contracts 2, 3, and 4, respectively.  (Dkt. 101.)  These amounts are equal to 10% of the gross

amount of each contract.  The jury awarded Tecna no damages arising out of Unisert's $10,000

underpayment on Contract 1.  (Dkt. 101.)

Defendant now moves for judgment as a matter of law under Rule 50(b) or, alternatively,

for a new trial under Rule 59.

## II.     LEGAL STANDARD

### A.     Rule 50 Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50, a motion for judgment as a matter of law may

be granted if a trial court finds that a "reasonable jury would not have a legally sufficient

---

[3] *Cf. Smith Int'l, Inc. v. Egle Grp.*, LLC, 490 F.3d 380, 387 (5th Cir. 2007) ("In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.") (internal quotations omitted).

[4] Although statutes of limitations are typically matters of law, the accrual of Tecna's cause of action turned on whether Unisert repudiated the Agency Agreement by March 26, 2010, which raised an issue of fact for the jury. *See Cont'l Cas. Co. v. Dr. Pepper Bottling Co. of Texas*, 416 F. Supp. 2d 497, 505–06 (N.D. Tex. 2006).

evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "The decision to grant a directed verdict . . . is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *Omnitech Int'l v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994) (omitting internal citations and quotation). There is no legally sufficient evidentiary basis when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (internal quotations omitted).

In evaluating such a motion, the court is to view the entire trial record in the light most favorable to the non-movant and draw all inferences in its favor, without making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150; *Becker v. PaineWebber, Inc.*, 962 F.2d 524, 526 (5th Cir. 1992). The court must "give credence to . . . that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Wallace v. Methodist Hospital Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 151.). Finally, "there must be more than a mere scintilla of evidence in the record to render the grant of JMOL inappropriate." *Wallace*, 271 F.3d at 219.

### B.      Rule 59 Motion for New Trial

Federal Rule of Civil Procedure 59 states that a court may, on motion, grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A court therefore may grant a new trial if it finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial

was unfair, or prejudicial error was committed in its course. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

Courts are to decide whether to grant a new trial based on their assessment of the fairness of the trial and the reliability of the jury's verdict. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). This decision lies within the discretion of the court. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). In determining whether to grant a motion for new trial, the court must view the evidence in the light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of the other party that the Court believes that reasonable persons could not arrive at a contrary conclusion. *Dawson v. Wal–Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). When a party moves for a new trial on evidentiary grounds, a new trial should not be granted unless "the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

## III.   ANALYSIS

Defendant moves for judgment as a matter of law—or, alternatively, for a new trial—on five grounds.

### A.   Statute of Limitations

The Court first turns to Unisert's affirmative defense of statute of limitations. "Limitation of actions is an affirmative defense that must be specifically pleaded and proved." *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, no writ). The party asserting the defense of statute of limitations "bears the burden of conclusively proving when the opponent's cause of action accrued." *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999). "Contract claims generally accrue when the contract is

breached." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App. 1992)). Limitations under Texas law for breach of contract is four years. Tex. Civ. Prac. & Rem. Code § 16.051. Tecna filed suit on March 26, 2014.

Unisert argues that "Tecna Peru knew before March 26, 2010 that Unisert had not paid, and would not pay, commissions on [Contract 2]," and concludes that Tecna's breach of contract claim should be barred as a result.[5] (Mot. 8.) This argument misses the point. Unisert must prove *when* the contract was breached (i.e., when the claim accrued) in order to demonstrate the bar of limitations. The fact that Unisert had not paid Tecna's commission as of March 26, 2010 is insufficient to prove that Unisert had breached the contract by that time. Non-payment gives rise to a breach only if payment is then due. Unisert cites no evidence—much less conclusive evidence—of when the commission was due and payable.[6] Unisert has therefore failed to carry its burden. Neither judgment as a matter of law nor a new trial is warranted on these grounds.

---

[5] Unisert also argues that recovery is barred in connection with Contract 1. The jury awarded no recovery in connection with Contract 1, however, and Tecna has stated that it will not appeal that finding. Accordingly, the Court will address the statute of limitations only as it applies to Contract 2.

[6] The Agency Agreement makes no reference to when payment of the 10% commission was due. At trial, there seemed to be a sense that Unisert was supposed to pay the commission as it received payments from a relevant customer. But even assuming this is true, Unisert failed to cite any evidence in the Motion showing that it received any payments prior to March 26, 2010. The lone piece of evidence cited by Unisert arguably suggests that Padilla *suspected* Unisert had received payments from CT (*see* Pl. Ex. 31), but this is an insufficient evidentiary basis for the Court to conclude, as a matter of law, that Unisert had in fact received payment and owed Tecna a commission as of March 26, 2010. Further, the amount of any purported payments from CT— and, by extension, the amount to which Tecna was entitled—is entirely unclear.

## B.      Repudiation

At trial, Unisert argued that it had repudiated the Agency Agreement.[7]   The Court

submitted the following question to the jury:

*Instruction*:

A party "repudiates" an agreement when he indicates, by his words or actions,
that he is absolutely, unequivocally, and unconditionally not going to perform his
obligations under the agreement in the future, showing a fixed intention to
abandon, renounce, and refuse to perform.

**Interrogatory No. 2:**

Did Unisert repudiate the Agency Agreement prior to March 26, 2010?

Answer "Yes" or "No."

The jury answered "No."  Unisert contends that this finding was against the great weight of the

evidence. To the contrary, says Unisert, the evidence conclusively established that Unisert *did*

repudiate the Agency Agreement.  The Court disagrees.

To constitute repudiation, a party "must absolutely and unconditionally refuse to perform

the contract." *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 2012 WL 524130, at *2 (S.D.

Tex. Feb. 15, 2012) (citing *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621

(Tex. App.—Houston [1st Dist.] 2003, pet. denied).  When one party repudiates a contract, the

non-repudiating party may treat the repudiation as a breach, or may ignore the repudiation and

await the agreed upon time of performance. *Id.* (citing *Ingersoll–Rand Co. v. Valero Corp.*, 997

S.W.2d 203, 211 (Tex. 1999)); *Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d

630, 638 (Tex. App.—Waco 2004) ("If the repudiation is not accepted by the other party, the

---

[7] At trial, Unisert raised the issue of repudiation in connection with its statute of limitations
defense—repudiation of a contract, when accepted by the non-breaching party, triggers the
accrual of a breach of contract action.  Here, it seems that Unisert is asserting repudiation as an
independent affirmative defense.  But either way, the discrepancy is of no significance.  There is
insufficient evidence to find repudiation as a matter of law.

contract is kept alive for the benefit of both parties."). Thus, Unisert bears the burden of proving both that it repudiated the Agency Agreement, and that Tecna accepted the repudiation. It fails to establish either element here.

Unisert relies entirely on two pieces of evidence. First, Unisert cites to a series of emails between the parties, arguing that a review of the correspondence shows a clear and unequivocal statement by Unisert that the Agency Agreement was terminated. Tellingly, however, Unisert fails to cite to the specific email in which this supposedly "clear and unequivocal statement" was made, much less identify the statement itself.

Second, argues Unisert, Tierling testified at trial that he expressly told Padilla that Tecna was fired. But Unisert neglects to mention that Tecna presented evidence directly controverting Tierling's testimony—Padilla specifically testified that Tierling did *not* make any such statement. The jury was entitled to weigh the competing accounts and find facts accordingly. *See Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 566 (S.D. Tex. 2011), *aff'd sub nom. Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013). The Court holds that the jury's finding was made on a legally sufficient evidentiary basis.[8]

## C. Prior Material Breach

At trial, Unisert introduced evidence purportedly showing that Tecna embezzled $140,000 of Unisert's funds. Unisert argued that this embezzlement constituted a material breach of the Agency Agreement. As a result, says Unisert, its subsequent breaches of the Agreement are excused.

---

[8] Because Unisert failed to establish that it repudiated the Agency Agreement, the Court need not determine whether Unisert established as a matter of law that Tecna accepted the repudiation.

Unisert now argues, "Whether Tecna's embezzlement of the funds constituted a material breach was therefore a fact issue for the jury."[9] (Mot. 15.) In other words, as best the Court can tell, Unisert is objecting that the Court failed to submit this issue to the jury—which is perplexing. The Court *did* submit the issue to the jury, and the jury answered "No." (Dkt. 101 at 9.) Indeed, the interrogatory that the Court submitted to the jury on prior material breach was practically identical to the interrogatory that Unisert proposed,[10] and Unisert spent considerable time in its closing arguments contending that Tecna breached the Agency Agreement by misappropriating the $200,000 "tip."

### D.      Jury Instruction No. 5

Unisert moves for a new trial on the grounds that the Court erred in submitting the following instruction to the jury:

**INSTRUCTION NO. 5**

**(Undisputed Facts)**

It is undisputed that Plaintiff Tecna Peru S.A.C. ("Tecna") and Defendant Unisert Multiwall Systems, Inc. ("Unisert") entered into a contract entitled "Agency Agreement."

---

[9] Although Unisert references—without any citations to the record—some of the testimony presented at trial in support of its "prior material breach" defense, Unisert does not indicate that it is entitled to judgment as a matter of law on this defense. The Court can only conclude that Unisert is moving for a new trial based on the mistaken belief that the Court failed to submit a material fact issue to the jury. In any event, judgment as a matter of law would be inappropriate here. The jury heard competing accounts regarding the "tip," and it was entitled to weigh those competing accounts and find facts accordingly.

[10] The Court's only alterations were made to remove the passive voice. *Compare* Dkt. 101 at 9 ("Unisert's failure to comply with the Agency Agreement is excused if Tecna previously and materially failed to comply with the same agreement. . . . Was Unisert's failure to comply with the Agency Agreement excused?") *with* Dkt. 85 at 10 ("Failure to comply by Unisert Multiwall Systems is excused by Tecna Peru S.A.C.'s previous failure to comply with a material obligation of the same agreement. . . . Was Unisert Multiwall System's failure to comply with the agreement to pay commission excused?").

10

It is further undisputed that, pursuant to the second provision of the Agency Agreement, Unisert promised to pay Tecna a base commission of 10% of the gross amount of each contract that Unisert secured as a result of Tecna's marketing and promotion of Unisert's products and services.

Finally, it is undisputed that Unisert failed to fully comply with this provision of the Agency Agreement.

Unisert contends that it presented evidence that it fully complied with the terms of the Agency Agreement up to the point that the Agreement was terminated, and that the Court therefore erred by instructing the jury that Unisert failed to fully comply. Unisert argues that the Court should instead have submitted the issue to the jury.

The evidence to which Unisert refers is Tierling's testimony that he terminated Tecna's services after he learned that Tecna had lied to him about the $200,000 "tip." But even assuming Tierling testified to this effect—Unisert provides no citation to the record—the Court struggles to understand how Tierling could have "terminated" the Agency Agreement.[11] The terms of the half-page agreement contemplate a right to termination only following "a yearly review of marketing performance." (Pl. Ex. 16.) There is no evidence that Unisert terminated the Agency Agreement pursuant to this provision, nor has Unisert argued—much less presented legal authority—to suggest that the agreement was otherwise unilaterally terminable. Moreover, even if Unisert had somehow unilaterally terminated the Agency Agreement, the Agreement further provided that, in the event of termination, "any project that has been identified shall remain commissionable for one year." (Pl. Ex. 16.) Thus, Unisert would have remained obligated to pay Tecna a commission on Contract 2, which it indisputably failed to do.

---

[11] Perhaps Unisert is referring to its purported repudiation—rather than termination—of the Agency Agreement. But repudiation is a different doctrine entirely. Even assuming Unisert repudiated the agreement, the Court's instruction would have remained accurate. Repudiation is, by definition, a positive and unequivocal statement that the repudiating party will not fully comply with a future obligation under the contract (*i.e.*, a breach). *See* 23 Williston on Contracts § 63:45 (4th ed.).

The Court therefore did not err by including Instruction No. 5, nor was an interrogatory on breach necessary. There was no dispute that: (i) the Agency Agreement bound Unisert to pay Tecna a 10% commission for each contract that Unisert secured as a result of Tecna's marketing and promotion of Unisert's products and services; (ii) as a result of Tecna's marketing and promotion, Unisert secured Contract 1, Contract 2, and Contract 3; (iii) Unisert paid Tecna a commission of less than 10% on Contract 1; and (iv) Unisert paid Tecna no commission on Contracts 2 or 3. *Ipso facto*, Unisert failed to fully comply with this provision of the Agency Agreement. The only question remaining at the close of evidence was the extent of Tecna's damages, and the disputed facts related to those damages were addressed in Interrogatories No.4 and 5.[12]

### E. Damages for Contract #4

Unisert avers that there was no evidence that Unisert secured Contract #4 as a result of Tecna's marketing and promotion of Unisert's products and services. Indeed, says Unisert, Padilla admitted as much,[13] and the Court should have directed a verdict in favor of Unisert instead of submitting Interrogatory No. 4(a) to the jury. The Court disagrees.

As discussed above, there is no dispute that Tecna's marketing led to Unisert securing Contracts 1 and 2, each of which was with Consorcio Terminales. In other words, Tecna was responsible for establishing Unisert's relationship with CT. Even if Tecna played no direct role in the procurement of Contract 4, this evidence was sufficient to allow a reasonable jury to

---

[12] To the extent the Court erred, it was by submitting Interrogatories No. 4(a), (b) and (c) to the jury. There was no dispute that Unisert had secured at least Contracts 1, 2, and 3 as a result of Tecna's marketing and promotion of Unisert's products and services. Any such error was harmless, however, because the jury's findings were consistent with these undisputed facts. And if the error had caused harm, it would have been to Tecna, not to Unisert.

[13] Unisert provides no citation to the record in support of this statement.

conclude that Unisert secured the contract as a result—albeit an indirect result—of Tecna's marketing of Unisert's services.

## IV.  CONCLUSION

After considering the parties' filings and the applicable law, the Court holds that Unisert's motion for judgment as a matter of law and motion for new trial are **DENIED**.

**IT IS SO ORDERED**.

Signed this 28th day of June 2017.

Hon. Keith P. Ellison
United States District Judge